Judson H. Henry, Esq. (SBN 226743)
LAW OFFICE OF JUDSON H. HENRY
6041 Brookside Circle
Rocklin, CA  95677
Phone:  (916) 899-6224
E-mail:  jhhenry2000@yahoo.com

**Attorney for Debtor-in-possession Richard Lyman**

### IN THE UNITED STATES BANKRUPTCY COURT

### IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>    RICHARD LYMAN,<br><br>        Debtors in Possession | Case No.:  2012-41214<br>DC No.:  JHH-8<br><br>Date:<br>Time:<br>Courtroom No.:  32<br>Judge:  Hon. Thomas Holman<br><br>United States Courthouse<br>501 I Street, 6th Floor<br>Sacramento, CA  95814 |

**FIRST AMENDED PLAN OF REORGANIZATION OF RICHARD LYMAN
DATED AND FILED SEPTEMBER 10, 2013**

## Table of Contents

ARTICLE I – SUMMARY ............................................................................................. 2

ARTICLE II – DEFINITIONS ........................................................................................ 2

ARTICLE III – CLASSIFICATION AND TREATMENT OF CLAIMS ........................... 6

ARTICLE IV – TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS ................ 9

ARTICLE V – PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................................................................................................................ 9

ARTICLE VI – MEANS FOR IMPLEMENTATION OF THE PLAN .......................... 10

ARTICLE VII – GENERAL PROVISIONS ................................................................. 11

ARTICLE VIII – DISCHARGE .................................................................................... 17

//

ARTICLE I – SUMMARY

This First Amended Plan of Reorganization (the "**Plan**") under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**") proposes to pay the creditors of RICHARD LYMAN, the above-captioned debtor-in-possession (the "**Debtor**") from the reorganization of rental properties and future income therefrom, as well as from the future income of Debtor.

This Plan divides the creditors whose claims existed prior to the bankruptcy filing date, December 10, 2012, into four (4) separate classes, which consist of three classes (classes 1, 2 and 3) that are each a secured claim, with the class 1 claim secured by real property commonly described as 5961 Becky Way Loomis, California 95650, with the class 2 claim an entirely unmodified and so unimpaired claim secured by Debtor's Merrill Lynch 401K retirement account, with the class 3 claim secured by personal property commonly described as Debtors 2006 Crownline 18 foot boat, and finally a class (class 4) that includes general unsecured claims. In the opinion of Debtors' counsel, three of these classes (classes 1, 3 and 4) are impaired within the meaning of 11 U.S.C. § 1124. The following Plan also provides for the vesting in Debtor of the property of this bankruptcy estate (class 5). The following Plan also provides for the treatment of administrative expense claims, although all such claims, pursuant to 11 U.S.C. § 1123(a)(1), are not placed into any class(es).

Debtor is not currently involved in litigation.

All creditors should refer to Articles III through V of this Plan for information regarding the precise treatment of their claims. The First Amended Disclosure Statement Disclosure Statement Dated and Filed September 10, 2013 ("**Disclosure Statement**") that provides more detailed information regarding this Plan and the rights of creditors was circulated with this Plan. Your rights may be affected. You should read these papers carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.

ARTICLE II – DEFINITIONS

2.1     "Allowed Claim" shall mean a Claim (a) in respect of which a proof of claim has been filed with the court within the applicable period of limitation fixed by Bankruptcy Rule

**First Amended Plan of Reorganization – JHH-8**
**In re Richard Lyman; Case No. 2012-41214**

3001; or (b) scheduled in the List of Creditors or Schedules prepared and filed with the court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent or un-liquidated as to amount, in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3001 or an order of the court, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.

2.2　"Allowed Interest" shall mean an Interest (a) in respect of which a proof of interest has been filed with the court within the applicable period of limitation fixed by Rule 3001; or (b) scheduled in the list of equity security holders prepared and filed with the court pursuant to Rule 1007(b), in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3001 or an order of the court, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.

2.3　"Allowed Secured Claim" shall mean an Allowed Claim secured by a lien, security interest or other charge against or interest in property in which Debtor has an interest, or which is subject to setoff under Section 553 of the Code to the extent of the value (determined in accordance with Section 506(a) of the Code) of the interest of the holder of such Allowed Claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

2.4　"Claim" shall mean any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment against Debtor in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, un-liquidated, fixed, contingent, matured, un-matured, disputed, undisputed, legal, beneficial, secured or unsecured.

2.5　"Class" shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Article III hereof.

2.6     "Code" shall mean the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. and any amendments thereof.

2.7     "Confirmation Date" shall mean the date upon which the Order of Confirmation is entered by the court.

2.8     "Court" shall mean the United States Bankruptcy Court for the Eastern District of California, in which the Debtor's Chapter 11 case, pursuant to which the Plan is proposed, is pending, and any court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

2.9     "Creditor" shall mean any person or entity that has a claim against the debtor.

2.10    "Debtor" or "Debtors" shall mean Richard Lyman.

2.11    "Effective Date" shall mean the date upon which the order of Confirmation is no longer subject to appeal or certiorari proceeding, or the date on which no such appeal or certiorari proceeding is then pending, and on which date all of the conditions to the effectiveness of the Plan expressly set forth in the Plan have been fully satisfied or effectively waived.

2.12    "Indebtedness" as applied to the Debtor shall mean:

(a) all indebtedness or other obligations of the Debtor for borrowed money for the deferred purchase price of property or services.

(b) all indebtedness of the Debtor, contingent, direct or otherwise, secured (or for which the holder of such indebtedness has an existing right contingent or otherwise to be secured) by any mortgage, pledge, lien, security interest or vender's interest under any conditional sale or other title retention agreement existing on any property or asset owned or held by the Debtor, whether or not the indebtedness secured thereby shall have been assumed by the Debtor (hereinafter "Secured Indebtedness"); or

(c) all indebtedness of others, secured or unsecured, directly or indirectly guaranteed, endorsed, or discounted with recourse by the Debtor, or in respect of which the Debtor is otherwise directly or indirectly liable, including without limitation, indebtedness in effect guaranteed by the Debtor through any agreement (contingent or otherwise) to purchase, repurchase or otherwise acquire such indebtedness or any security therefore, or to provide funds

4

**First Amended Plan of Reorganization – JHH-8**
**In re Richard Lyman; Case No. 2012-41214**

for the payment or discharge of such indebtedness or of any other liability of the obligor of such indebtedness (whether in the form of loans, advances, stock purchases, capital contributions or otherwise), or to maintain the solvency or any balance sheet or other financial condition of the obligor of such indebtedness, or to make payment for any products, materials or supplies or for any transportation or services regardless of the non-delivery or non-furnishing thereof.

2.13  "Net Income" shall have the same definition as is used on Schedule J of the Official Bankruptcy Forms, specifically line 20.c.

2.14  "Order of Confirmation" shall mean the order entered by the court confirming the Plan in accordance with the provisions of Chapter 11 of the Code which order is no longer subject to appeal or certiorari proceeding or as to which no appeal or certiorari proceeding is pending.

2.15  "Person" shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

2.16  "Petition Date" shall mean December 10, 2012 the date on which Debtor filed his Chapter 11 petition with the court.

2.17  "Plan" shall mean this First Amended Chapter 11 Plan.

2.18  "Rules" shall mean the Bankruptcy Rules, as amended and supplemented by the Interim Bankruptcy Rules (and local bankruptcy rules) as adopted by the court.

2.19  "Secured Creditor" shall mean any creditor who holds a claim against the Debtor secured by a lien, security interest or other encumbrance which has been properly attached and perfected as required by law with respect to property of the estate, or who holds a claim that is subject to setoff under Section 553 of the Code to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be.

2.20  <u>Undefined Terms and Section Numbers</u>.  A term used, but not defined, in this Plan, but defined in the Code has the meaning given to that term in the code, unless the context

//

clearly indicates or requires otherwise. References in this Plan to a code section are references to the Code, except as otherwise indicated.

## ARTICLE III – CLASSIFICATION AND TREATMENT OF CLAIMS

3.1 **Class 1 (impaired)**:

(a) A Secured Claim held by Creditor Green Tree Servicing LLC, in the amount of $252,000.00, for a Secured Claim secured by Debtors' real property commonly described as 5961 Becky Way Loomis, California 95650 (the "Property").

(b) Green Tree Servicing, LLC shall have an Allowed Secured Claim in the amount of $252,000.00 with the balance of its claim being unsecured and provided for under Class 4. The Debtor shall pay Green Tree Servicing LLC the sum of Two Hundred Fifty Two Thousand Dollars ($252,000.00), together with interest on the unpaid principal at a fixed rate of Five-and-One-Quarter Percent (5.25%) in 360 equal monthly installments commencing the first day of the first full month following the Effective Date, and continuing on the first day of each month thereafter until the new maturity date. Interest shall be calculated on a 365 day year. Green Tree Servicing, LLC shall place a monthly escrow for taxes and insurance on the Property, for which the Debtor shall remain fully responsible in paying, as an additional component of and part of Debtor's monthly payment amount to Green Tree Servicing, LLC. With exception of the modification of the payment terms, the terms, conditions and covenants of the Promissory Note, Deed of Trust and related security agreement shall not be modified. Green Tree Servicing, LLC shall retain its lien on 5961 Becky Way Loomis, California 95650 until paid in full as provided in the Plan.

(c) Consequent to and consistent with subsections 3.1 (a) and (b), Debtor shall pay to Creditor Greentree Servicing LLC, as Debtor's provision for its Class 1 claim, over the course of 360 months, $1,391.55 per month, plus that additional amount each month required to fully fund the escrow account held by Green Tree Servicing, LLC that is used for the purpose of paying taxes and insurance on the Property.

//

//

3.2   **Class 2 (unimpaired)**:

(a)   Two Secured Claims, each held by Creditor Merrill Lynch, in the amounts of $13,477.38 ("Loan #3") and $16,549.98 ("Loan #4"), each a Secured Claim that is secured by Debtor's 401K retirement account.

(b)   Merrill Lynch shall have two Allowed Secured Claims in the amount of $13,477.38 and $16,549.98.  The Debtor shall pay Merrill Lynch the full balance of its Class 2 claims, pursuant to the terms of the original agreement executed by the parties and any related security agreements in existence prior to the Petition Date, until such time as this class 2 claims are paid in full at the maturity date as specified in these agreements.  Specifically, Loan #3 pays $185.15 per month at 4.25% with a payoff date of July 30, 2016 (78 payments remaining as of May 2, 2013) and Loan #4 pays $248.27 per month at 4.25% with a payoff date of April 15, 2016 (71 payments remaining as of May 2, 2013).  The agreement(s) between the parties, as well as any related security agreement, shall not be modified.  Merrill Lynch shall retain its liens on Debtor's 401K retirement account until paid in full as provided in the Plan.

(c)   Consequent to and consistent with subsections 3.2 (a) and (b), Debtor shall pay to Creditor Merrill Lynch, as Debtor's provision for its Class 2 claims, as specified in the agreement and related security agreements in existence prior to the Petition Date, $433.42 per month [composed of $185.15 per month on Loan #3, plus $248.27 per month on Loan #4].

3.3   **Class 3 (impaired)**:

(a)   A Secured Claim held by Creditor Santander Consumer USA, in the amount of $8,300.00, for a Secured Claim secured by Debtor's personal property commonly described as a 2006 Crownline 18 foot boat (the "**Crownline**").

(b)   Santander Consumer USA, Inc. shall have an Allowed Secured Claim in the amount of $8,300.00 with the balance of its claim being unsecured and provided for under Class 4.  The Debtor shall pay Santander Consumer USA, Inc. the sum of Eight Thousand Three Hundred Dollars ($8,300.00), together with interest on the unpaid principal at a fixed rate of Four Percent (4.00%) in 120 equal monthly installments commencing the first day of the first full month following the Effective Date, and continuing on the first day of each month thereafter

until the new maturity date.  Interest shall be calculated on a 365 day year.  With exception of the modification of the payment terms, the terms, conditions and covenants of the note, it and the related security agreements shall not be modified.  Santander Consumer USA, Inc. shall retain its lien on the Crownline until paid in full as provided in the Plan.

        (c)    Consequent to and consistent with subsections 3.3 (a) and (b), Debtor shall pay to Creditor Santander Consumer USA, Inc. as Debtor's provision for its Class 3 claim, over the course of 120 months, $84.03 per month.

    3.4    **Class 4 (impaired)**:

        (a)    All general unsecured claims of creditors whose unsecured claims arose in any manner prior to the filing of this bankruptcy case, or arose from the rejection of an executory contract or lease prior to the rejection of the same.  These Class 4 claims include three claims that were formerly, at time(s) pre-petition, secured by Property, including the claim of The Law Offices of Scott Bovee [$5,546.00], the unsecured portion [$135,488.50] of the claim of Greentree Servicing LLC, and the unsecured portion [$11,448.79] of the claim of Santander Consumer USA, Inc.  Additionally, Class 4 claims include the claim of Capital One [$800.00] and the claim of U.S. Bank [$1,784.93].

        (b)    The Class 4 claims shall be paid a twenty percent (20%) dividend at no (0%) interest, in one hundred twenty (120) equal installments, with each such installment to be made monthly commencing the first day of the first full month following the Effective Date of Debtor's Plan of Reorganization.

        (c)    Consequent to and consistent with subsections 3.4 (a) and (b), Debtor shall pay to all Creditors holding Class 4 claims, as Debtor's provision for their Class 4 claims, over the course of 120 months, a total of $258.38 per month.  Debtor shall subdivide this $258.38 total each month, *pro rata*, and pay to each Class 4 claim-holder each month, based upon each claim-holders claim amount, its *pro rata* share.

//

//

//

3.5 **Class 5 (not impaired)**:

    (a) The Class 5 claim shall include Debtors' interest in the property of this bankruptcy estate, all of which property shall entirely vest in Debtor upon confirmation of this Plan.

    (b) The Class 5 claim is unimpaired by this Plan.

## ARTICLE IV – TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES AND PRIORITY TAX CLAIMS

4.1 Unclassified Claims. In accordance with 11 U.S.C. § 1123(a)(1), administrative expense claims and priority tax claims are not in classes.

4.2 Administrative Expense Claims. Costs and expenses of administration as defined and allowed 11 U.S.C. §§ 503, 507, for which application for allowance is made or a claim is filed, either prior to or after, the effective date of this plan, as the same are allowed, approved and ordered paid by this court. Administrative Expense Claims shall be paid in full on the Effective Date of this Plan, or when they are allowed, whichever occurs later, unless the administrative claimants agree otherwise.

4.3 Priority Tax Claims. Claims entitled to "priority," as such term is defined in 11 U.S.C. § 507(a)(8), as the same are allowed, approved and ordered paid by the court. Debtor knows of no priority tax claims against this bankruptcy estate.

4.4 United States Trustee Fees. A quarterly fee shall be paid by Debtor to the United States Trustee, for deposit into the United States Treasury, for each quarter (including any fraction thereof) until this case is converted, dismissed, or closed by the entry of a final decree pursuant to 28 U.S.C. § 1930(a)(6). Debtor shall pay in full on the Effective Date of the Plan any amount owed by Debtor to the United States Trustee as of the Effective Date.

## ARTICLE V – PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1 The unexpired lease of the Debtor with Hidden Grove Apartment Homes, in which Debtor is lessee (lease of Debtor's residence), is expressly assumed under 11 U.S.C. § 365. Any and all other executory contracts and unexpired leases of the Debtor under which the Debtor may owe a monetary obligation (if any), which were not previously assumed or rejected under 11

U.S.C. § 365 with approval of this court, are hereby expressly rejected. To the extent that any present and/or future accounts receivable and present and/or future leases with tenants in which Debtor is lessor may be construed to be governed by 11 U.S.C. § 365, the same are expressly assumed under 11 U.S.C. § 365. Any claim for damages allegedly suffered or incurred by any person or entity who is a party to such rejected contracts or leases shall file a proof of Claim herein within thirty (30) days after the Effective Date of this Plan, and such Claim shall be treated as provided for in Class 4. Debtor is aware of no executory contracts upon which he owes any account payable or other funds. Debtor is aware of one unexpired lease in which he is a lessee, the aforementioned lease with Hidden Grove Apartment Homes, as is reflected on his Schedule G.

## ARTICLE VI – MEANS FOR IMPLEMENTATION OF THE PLAN

6.1　Source of Payments. The Debtor is an individual and conducts all business as a sole proprietor. Payments and distributions under the Plan will be funded by the Debtor, based upon his projected monthly revenues as derived from the combination of all of his business activities, which projected amount at present is actually realized by Debtor, and as supported by Debtor's five most recent monthly operating reports, which has been for five months now very consistently in an amount sufficient to (a) meet Debtors' ongoing necessary business and administrative expenses, (b) meet Debtors' ongoing personal living expenses, and (c) fully fund the Plan as proposed.

6.2　Method of Plan Payments

  a. Debtor shall commence monthly distributions to the Creditors on the first date of the first full month following the Effective Date of the Plan.

  b. Except as otherwise provided in the Plan, or upon the entry of a final, non-appealable order of the Bankruptcy Court, or as agreed to by the relevant parties, distributions under the Plan on account of a disputed claim that becomes an allowed claim after the effective date of the Plan shall be begin on the regular monthly payment date, as established by the Debtor, which is at least thirty (30) days after such claim becomes an allowed claim.

  c. Notwithstanding anything in the Plan to the contrary, and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a disputed claim until all such disputes in connection with such disputed claim have been resolved by settlement among the parties or a final order of the Bankruptcy Court. In the event that there are disputed claims requiring adjudication and resolution, the Debtor shall establish appropriate reserves for potential payment of such Claims.

 6.3 Disbursing agent. The disbursing agent who shall be appointed and authorized to make all disbursements and payments required by this Plan is the Debtor, Richard Lyman. The disbursements hereunder shall be made by checks drawn on the accounts of the Debtor and signed by the debtor as disbursing agent, provided, however, that the disbursing agent shall not be liable for any action or failure to act hereunder in the absence of proof of bad faith or gross negligence.

 6.4 Post-confirmation Management. The Debtor will manage his business operations and property post-petition in the ordinary course. Debtor will be authorized to enter into, terminate and renew lease agreements as he sees fit.

ARTICLE VII – GENERAL PROVISIONS

 7.1 Definitions and Rules of Construction. The definitions and rules of construction set forth in Sections 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

 7.2 Effective Date of Plan. The effective date of this Plan is the fifteenth business day following the date of the entry of the confirmation order. However, if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

 7.3 Modification of Plan. Debtor retains the right to request modification of this Plan, at any time prior to its completion, so long as the Plan as so modified is prior to substantial consummation and otherwise complies with 11 U.S.C. § 1127.

7.4  Vesting of Property.  Upon the Effective Date, all property of the estate and interests of the Debtor will vest in the reorganized Debtor pursuant to 11 U.S.C. § 1141(b) free and clear of all claims and interests except as provided in this Plan, subject to Debtor performing the provisions in this Plan.

7.5  Quarterly Fees to U.S. Trustee.  A quarterly fee shall be paid by Debtor to the United States Trustee, for deposit into the United States Treasury, for each quarter (including any fraction thereof) until this case is converted, dismissed, or closed by the entry of a final decree pursuant to 28 U.S.C. § 1930(a)(6).  Debtor shall pay in full on the Effective Date of the Plan any amount owed by Debtor to the United States Trustee as of the Effective Date.

7.6  Postconfirmation Reports and Final Decree.

(a)  Post-confirmation Reports.  At the end of each calendar quarter after confirmation of this Plan, Debtor shall file with the Court a post-confirmation status report, the purpose of which is to explain the progress made toward full administration of the confirmed Plan of Reorganization.  The first report shall be filed for the portion of the calendar quarter from the date of confirmation to the end of the quarter.  Subsequent reports shall be filed at the expiration of each calendar quarter thereafter until dismissal, conversion, or entry of a final decree closing the case.  Reports shall be filed with the Court and served upon the United States Trustee no later than twenty (20) days after the expiration of the reported quarter.  The report shall include a statement of receipts and disbursements, with the ending cash balance, for the entire ninety (90) day period.  The report shall also include information sufficiently comprehensive to enable the Court to determine: (1) whether the order confirming the Plan has become final; (2) whether deposits, if any, required by the Plan have been distributed; (3) whether any property proposed by the Plan to be transferred has been transferred; (4) whether Debtor under the Plan has assumed the business or the management of the property dealt with by the Plan; (5) whether payments under the Plan have commenced; (6) whether accrued fees due to the United States Trustee under 28 U.S.C. § 1930(a)(6) have been paid; and (7) whether all motions, contested matters and adversary proceedings have been finally resolved;

//

(b)     Service of Reports: A copy of each report shall be served upon the United States Trustee and other persons or entities as have requested service of such reports in writing with the Court and served upon Debtor and his counsel, no later than the day upon which the report is filed with the Court.

(c)     Final Decree: After the estate is fully administered, Debtor shall file an application for final decree, and shall serve the application on the United States Trustee, together with a proposed final decree. The United States Trustee shall have twenty (20) days within which to object or otherwise comment upon the Court's entry of the final decree.

7.7     The Reorganized Debtor. The Debtor is an individual and conducts all business as a sole proprietor. The reorganized Debtor may conduct and operate all his businesses without supervision or approval by the Bankruptcy Court. Debtor will be authorized to enter into, terminate and renew lease agreements and business engagement contracts as he sees fit. Such activities will include, but not necessarily be limited to, entering into lease contracts for Debtors real property and/or contracts for improvement of real property, repairing real properties and maintaining a reserve account.

7.8     Release of Liens, Claims and Equity Interests. After the successful completion of the plan all unsecured liens, claims, mortgages, deeds of trust, or other security instruments against the property of the Debtors' estate shall be fully released and discharged. The security interests of the Debtor's lien holders (secured claimants), however, shall be unimpaired under the Plan with respect to both the Debtor and his property.

7.9     Objection(s) to Claims. Debtor shall review all Claims in this case and shall file any objections as are deemed appropriate in writing on or before sixty (60) days after the Effective Date of this Plan.

7.10     Unclaimed Distributions. Whenever a distribution to a holder of an Allowed Claim remains unclaimed for ninety (90) days from issuance, the holder of the Allowed Claim theretofore entitled to such distribution shall cease to be entitled to such distribution and shall cease to be entitled to any further distribution(s).

//

**First Amended Plan of Reorganization – JHH-8**
**In re Richard Lyman; Case No. 2012-41214**

7.11    Event of Default. In the event there is a default in the payment of any claim, or a material default in the performance by Debtor of his obligations under the Plan, and if the Debtor fails to cure the default within twenty (20) calendar days of the receipt of a written notice from such affected Claimant, the holders of such claims shall be free to exercise any and all remedies they may have under state and federal law, without necessity of further order of this Court. Alternatively, in the event there is a default under the terms of the Plan after the Effective Date, in accordance with Section 1112(b) of the Code, holders of claims shall be entitled to move for dismissal of the case. The provisions of this section shall not be construed to limit the remedies creditors and other parties-in-interest may have under state or federal law.

7.12    Retention of jurisdiction. The court shall retain jurisdiction until this Plan is fully consummated, specifically including, but not limited to, jurisdiction to determine all objections that may be filed to claims of creditors herein; to fix and award compensation to parties who may be so entitled; to hear and determine all questions concerning the assets or property of the Debtor, including any questions relating to any sums of money, services or property due to the Debtor; and to determine all matters of any nature or type necessary or appropriate to carry out the provisions of this Plan.

7.13    Retention and Enforcement of Claims. Pursuant to Section 1123(b)(3) of the Code, the Debtor shall retain and hereby expressly reserves the right and discretion to prosecute or enforce any and all Claims, including, but not limited to, causes of action against third parties under applicable state or federal law, held by Debtor, whether such claims arose or accrued before or after the December 10, 2012 filing date.

7.14    Use of Bankruptcy Code Section 1129(b). The Debtor, as the proponent of this Chapter 11 Plan, hereby request pursuant to Section 1129(b) of the Code, that this Court find that the provisions of this Plan provide fair and equitable treatment to and do not unfairly discriminate against those Claimants and interest holders who are impaired under the Plan and who elect not to accept the Plan, and that this Court confirm the Plan under the so-called "cram-down" provisions of the Plan pursuant to Section 1129(b) of the Code notwithstanding the requirement of Section 1129(a)(8) of the Code as to such Claimants.

7.15 **Term of Plan.** This Plan shall continue in effect until all one hundred twenty (120) monthly installment payments to Class 3 Claimant Santander Consumer USA, Inc. and to the general unsecured (Class 4) Creditors are paid in accordance with this Plan (ten years duration per its terms), or in accordance with any approved modification thereto.

7.16 **Effectuating Documents; Further Transactions.** The Debtor may take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.

7.17 **Exemption from Certain Transfer Taxes.** Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the confirmation order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

7.18 **Revocation of Plan.** The Debtor reserves the right to revoke or withdraw the Plan prior to the confirmation hearing and to file subsequent Chapter 11 plans. If the Debtor revokes or withdraws the Plan, or if confirmation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Court; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against the Debtor or any other entity; (b) prejudice in any manner the rights of the Debtor or any other entity; or (c) constitute an admission, acknowledgment, offer or undertaking of any sort by the Debtor or any other entity.

7.19 **Successors and Assigns.** The rights, benefits and obligations of any entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

7.20　Reservation of Rights.　Except as expressly set forth herein, the Plan shall have no force or effect until the Court enters the confirmation order.　Neither the filing of the Plan, any statement or provision contained in the Disclosure Statement, nor the taking of any action by the Debtor or any other entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtor with respect to the holders of claims or other entity; or (2) any holder of a Claim or other entity prior to the effective date of the Plan.

7.21　Further Assurances.　The Debtor or the reorganized Debtor, as applicable, all holders of Claims receiving distributions under the Plan and all other entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the confirmation order.

7.22　Severability.　If, prior to confirmation of the Plan, any term or provision of the Plan is held by the Court to be invalid, void or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, provided that any such alteration or interpretation must be in form and substance reasonably acceptable to the Debtor, and, to the extent such alteration or interpretation affects the rights or treatment of holders of unsecured claims, such claim holder.

7.23　Return of Security Deposits.　Debtor does not have any security deposits held by any person or entity at this time.

7.24　Filing of Additional Documents.　On or before the Effective Date, the Debtor may file with the Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

7.25　Captions.　The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

//

//

**First Amended Plan of Reorganization – JHH-8**
**In re Richard Lyman; Case No. 2012-41214**

ARTICLE VIII – DISCHARGE

8.1     Discharge. Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code.  The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

8.2     Notwithstanding the preceding paragraph, Debtor reserves the right to bring a noticed motion for a discharge, pursuant to Section 1141(d)(5) of the Code, at the earliest time practicable, and at such time Debtor anticipates discharge of any and all Claims against the Debtor that arose prior to Confirmation, other than any debt excepted from discharge under 11 U.S.C. § 523.  The discharge, when entered, shall be effective as to all Claims regardless of whether a proof of Claim was filed, whether the Claim is an Allowed Claim or whether the holder of the Claim votes to accept the Plan.  The automatic stay of Section 362 of the Code shall remain in effect until the case is closed or dismissed, or until the discharge becomes effective.

Dated:   September 10, 2013

Respectfully submitted,

By:      /s/ Richard Lyman
            Richard Lyman, Debtor-in-possession

Approved:

By:      /s/ Judson H. Henry
            Judson H. Henry (SBN 226743),
            Attorney for Debtor-in-possession